UNITED STATES DISTRICT COURT
for the

Southern District of Indiana

Indianapolis Division

| | |
|---|---|
| Jennifer Gomez-Schultz )<br>*Plaintiff* )<br> )<br>v. )<br> )<br>American Water d/b/a Indiana-American Water )<br>Company Inc. )<br>*Defendant* ) | Case No. 1:23-cv-606<br><br>Jury Trial Demand |

**COMPLAINT FOR EMPLOYMENT DISCRIMINATION**

Now comes, Plaintiff, Jennifer Gomez-Schultz, by counsel Thakena Hogue, asserting her Complaint for employment discrimination and retaliation against Defendant, American Water d/b/a Indiana American Water. In support of her Complaint, Plaintiff alleges the following:

**I.      NATURE OF CLAIMS**

1.    This is an action brought by Jennifer Gomez-Schultz ("Plaintiff") against Defendant, American Water d/b/a Indiana American Water Company Inc. ("Defendant" and/or "Company"). Plaintiff and Defendant were in an employment relationship. Defendant violated Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. § 2000e ("Title VII") and the Civil Rights Act of 1866, as codified, 42 U.S.C § 1981 ("Section 1981") and Indiana Civil Rights Code 22-9-1 *et. seq* by exercising unlawful employment practices against Plaintiff. Defendant permitted its employees and or agents to commit discriminatory treatment and harassment against Plaintiff due to her race and sex. In response to said

treatment, Plaintiff asserted several complaints. After such, Defendant unlawfully retaliated against Plaintiff by terminating her employment.

## II.     JURISDICTION AND VENUE

2. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding the deprivation of Plaintiff's rights under Title VII and Section 1981. The Court has supplemental jurisdiction over Plaintiff's related claims arising under state and local law pursuant to 28 U.S.C. §1367(a).

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in this district.

## III.    ADMINISTRATIVE PROCEDURES

4. Prior to filing this Complaint, Plaintiff filed a charge with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging violations of Title VII. Plaintiff's EEOC charge arose out of the same facts alleged herein. A year after filing her Complaint, Plaintiff's charge was transferred to another EEOC office due to the substantial workload of the office that initially received her charge. Upon notification that her charge had been transferred, Plaintiff requested that the EEOC issue her right to sue to pursue this claim in federal court. Enclosed as Exhibit A is Plaintiff's *Notice of Your Right To Sue,* as issued by the EEOC.

## IV.     PARTIES

5. Plaintiff, Jennifer Gomez-Schultz is a female, Native American, adult resident citizen of 1630 Sherwood Drive, Orland Park, IL 60462.

6. Upon information and belief, Defendant, American Water d/b/a as Indiana-American Water is a corporation headquartered with its principal place of business at 1 Water Street

Camden, NJ 08102. American Water is engaged in water and wastewater system operations. American Water has locations across the United States. Plaintiff was employed at Defendant's Indiana location at 153 N. Emerson Avenue, Greenwood, IN 4614. This location is believed to oversee the Company's Indiana operations. The specific site at which Plaintiff worked was located at 1650 Michigan Street, Gary, Indiana 46402.

## V.     FACTUAL ALLEGATIONS

7. Plaintiff is a female, Native American, and former employee of Defendant.

8. Plaintiff was employed as an Operations Supervisor (non-union position) by Defendant on July 12, 2021, and was terminated on September 24, 2021.

9. Plaintiff was appropriately qualified for her position with Defendant. Plaintiff underwent and successfully completed Defendant's screening and interview process.

10. Plaintiff initially reported directly to a Roberto Pena, a Hispanic male, whose tenure at the Company well exceeded 20 years.

11. Plaintiff was asked specifically by the Company's Manager of Health and Safety, Justin Rich, to perform safety rounds as a part of her job with Company.

12. Starting on the first day of her employment, Plaintiff's experienced "cat calls" and howling noises that were directed towards her due to her race and sex.

13. Plaintiff immediately informed her supervisor of this harassing and discriminatory behavior. Plaintiff told her supervisor that she believed this was happening because of her race and sex.

14. Having witnessed this behavior himself, Plaintiff's supervisor, Roberto Pena, acknowledged that this behavior was inappropriate. Plaintiff's supervisor stated that he would talk with the perpetrators.

15. Based on the type of sounds the white male employees were making, Plaintiff asked her supervisor whether her coworkers had assumed that she was Mexican.

16. In response, Roberto Pena affirmed that her coworkers had assumed that she was indeed Mexican. He went to affirm that he himself was Mexican. Further, that the cat calls and howling noises that the Company male employees were making were used as a way for a man to make sexual advances on a woman or to sexually humiliate or embarrass a woman. He assured her that he would make a formal report of their behavior.

17. On or around July 13, 2021, Holly True, Roberto Pena's supervisor, told Plaintiff that she received a report alleging that Plaintiff and Roberto Pena were in a romantic relationship. Holly True stated that Ryan Reagor (one of the Company's white male employees) had made the report.

18. Plaintiff vehemently denied this allegation and informed Holly True that Plaintiff is married. Plaintiff told Holly True that she had known Roberto Pena since childhood and that they were not and had not been in a romantic relationship.

19. At this time, Plaintiff informed Holly True of the harassing and discriminatory behaviors that had been directed towards her by the Company's males. Plaintiff informed Holly True that she believed that this behavior was racially and sexually motivated.

20. Holly True confirmed that Roberto Pena had made her aware of these incidents.

21. During her employment, Plaintiff was asked by one of the Company's employee, Tom Makatura, whether she was a "she-male" type. Tom Makatura mocked Plaintiff's career choice, stating that it was not feminine at all.

22. Plaintiff informed her supervisor of what Tom Makatura's comments. Plaintiff stated that she felt harassed and humiliated by what Tom Makatura had said to her.

23. Plaintiff was informed by the Company's Union President, Bob Vah, that the Union had placed a bet on her tenure. Bob Vah's sentiment was that nobody wanted Plaintiff to be in her role and that they felt like she did not belong. The Company's employees wanted a man in Plaintiff's role, not a woman. Bob Vah said that the ongoing joke was that Plaintiff would only last five months before she would be fired.

24. Bob Vah went on to say that he and the other employees would simply call the Company's grievance/complaint hotline and complain about Plaintiff, which would eventually force the Company to get rid of her.

25. Instead of referring to Plaintiff by her name, the Company's employees would call her "little girl." Further, the Company's employees would mockingly ask her if she was lost and in the wrong place.

26. While Plaintiff was performing her job, the Company's employees would follow her around the worksite and watch everything that she did.

27. Plaintiff felt harassed by this behavior. Plaintiff felt this was an attempt to intimidate her and scare her so that she would stop making safety violation, harassment, and discrimination reports. Further, she felt it was the Company's employees intent to scare her away and make her quit her job.

28. Plaintiff reported this behavior to both Roberto Pena and Holly True. She told them both that she felt this behavior was based on her race and sex.

29. On July 14, 2021, after a safety meeting led by Roberto Pena, Plaintiff and Roberto Pena were met in the garage by an employee named, Ryan Reagor.

30. Ryan Reagor immediately attacked Roberto Pena making worksite demands, speaking to Roberto Pena incorrigibly, and threatening to shut down the job if his worksite needs were not met.

31. This was the first time that Plaintiff had met Ryan Reagor. She immediately recalled Holly True's conversation, two days prior, informing her that Ryan Reagor had accused she and Roberto Pena of having a romantic affair.

32. Plaintiff was visibly shocked and scared by Ryan Reagor's aggressive behavior.

33. In response, Roberto Pena apologized to Plaintiff for the aggressive behavior of Ryan Reagor. As the two exited the garage, Plaintiff could hear the other employees "cat calling".

34. On July 15, 2021, while performing an inspection, Plaintiff noticed a sticker on the back of a Company truck that read, "I wish my boyfriend was Mexican!" She immediately reported this to Roberto Pena, informing him that she felt that this was targeted towards her. Especially, given the fact that the sticker had not been present the day prior. She also requested that he report this incident.

35. On July 15, 2021, Roberto Pena and Plaintiff visited a worksite that was led by Ryan Reagor. Plaintiff immediately noticed that Ryan Reagor and his crew were not wearing safety glasses -while on an active worksite with heavy backhoe machinery and a trench eight to ten feet deep. This was both a Company safety violation but also a violation of Occupational Safety Health Administration ("OSHA") regulations.

36. Plaintiff asked Ryan Reagor about the lack of safety glasses.

37. Ryan Reagor responded, "Do you even know what you're doing here?" He mocked her, questioning whether she was even qualified to have her job. He went on to tell her that

        she did not know anything and that she should go back to the office and learn her job. He told her that she should first start with reviewing the Union's revised safety policy that overruled OSHA's regulations. He then angrily asked her if she even understood English.

38. Ryan Reagor told Plaintiff that, "It was his intent to make Indiana American Water Great Again." (Referencing the presidential slogan of Donald Trump that is known to be a racial epithet).

39. Plaintiff was humiliated and embarrassed by Ryan Reagor.

40. Ryan Reagor's pervasive discriminatory and harassing behaviors towards her caused her a tremendous amount of embarrassment and stress.

41. As Plaintiff walked away from Ryan Reagor, she noticed the Company truck with the "I wish my boyfriend was Mexican," sticker. The truck was being used by the Ryan Reagor's worksite crew. Plaintiff again pointed out the sticker to Roberto Pena and asked that he please get it removed.

42. Ryan Reagor sent the Safety Manager, Justin Rich, a letter regarding this same incident. The Safety Manager shared the letter with Roberto Pena and Plaintiff.

43. Despite the fact that both Roberto Pena and Justin Rich were aware of Ryan Reagor's behavior towards Plaintiff, the Company did not intervene to permit this discriminatory and harassing behavior.

44. As a part of her role with the Company, Plaintiff was supposed to receive a purchase card ("Pcard"). This was a custom for every similarly situated employee at her level of employment. However, Roberto Pena informed her that Holly True was declining to issue her a card until the following year. This was out of the ordinary because all of Plaintiff's

similarly situated coworkers had Pcards issued to them. This was another attempt by the Company's employees to humiliate and demean Plaintiff based on her race and sex.

45. Plaintiff was routinely referred to as the Safety-Nazi by the Company's employees. Plaintiff believes that she was called this because of her surname, Schultz.

46. On the afternoon of July 16, 2021, Plaintiff received notification from Shannon Ferguson of Human Resources, that the Company was going to investigate the allegations made Ryan Reagor regarding she and Roberto Pena alleged sexual relationship. Shannon Ferguson stated that they had received a report that Plaintiff and Roberto Pena were seen in attendance at a Company party in 2019.

47. Again, Plaintiff shared that she was not employed with the Company at that time. Further, Plaintiff told Shannon Ferguson that she attended the Company party as a guest of her daughter, Aeliz Cyna, who was employed with the Company at that time.

48. During this conversation, Plaintiff reported to Shannon Ferguson, the acts of retaliation, harassment, and discrimination that she had experienced. Further, she let Shannon Ferguson know that she had reported this to Roberto Pena, who was also a witnessed to these incidents. She had also reported these incidents to Holly True and Justin Rich.

49. On July 19, 2021, Plaintiff received an email notifying her of Allyship training that was to occur in September. Plaintiff inquired about this opportunity to her supervisor, Roberto Pena. However, Holly True emailed Roberto Pena and Iris Pace (Company's Human Resources Representative) that Plaintiff would not be attending that training. Holly True provided no reason or explanation. Allyship training was provided to the Company's employees that were similarly situated to Plaintiff. Again, this was another way in which the Company barred Plaintiff from opportunities that were specific to her role, that she

was qualified for, and that she requested, and that were given to her similarly situated counterparts.

49. On July 20, 2021, after a meeting, Plaintiff was approached by Melissa Simkins, Operations Support Specialist, who shared that there were several romantic relationships going on at the Company. Some of the relationships were between managers and their subordinates. The employees in these relationships were all white and had not undergone any sexual misconduct investigations. This was disturbing to Plaintiff as the Company had targeted her and accused her of engaging in a sexual relationship with her supervisor. Further, the Company at this point had initiated an investigation. The investigation was not kept confidential and thus Plaintiff's reputation both personally and professionally was jeopardized.

50. Plaintiff was warned on several occasions not to upset the Company's Union employees.

51. On July 22, 2021, there was a business meeting with managers across the state via Zoom. During this meeting Brad Redelman, the Company's Union President, told everyone that Plaintiff had no idea what she was doing and that she was just causing confusion in the field.

52. Plaintiff informed Justin Rich and Roberto Pena that she was terribly embarrassed, humiliated, and upset by what Brad Redelman had done. Further, that Plaintiff told them that she felt that his comments were based on her race and sex.

53. On July 23, 2021, Plaintiff had a meeting via Zoom with Shannon Ferguson regarding the alleged romantic affair with Roberto Pena. The meeting was loud enough to heard by anyone passing by. During this meeting Shannon Ferguson continued to reference the

Company party in 2019. Plaintiff reminded Shannon Ferguson that she was not even employed by the Company at that time and that she and Roberto Pena had never been in a romantic relationship. Plaintiff told Shannon Ferguson that these allegations were now common knowledge in the workplace, and this all has only exasperated the harassment and discrimination she was already experiencing. Further, Plaintiff informed Shannon Ferguson that the daily harassment, discrimination and the Company's allegation of an affair, had taken a toll on her emotional wellbeing and her personal relationships.

54. Plaintiff told Shannon Ferguson that she was experiencing harassment outside of the workplace by the Company's employees. Plaintiff told Shannon Ferguson that she had witnessed some of her white male co-workers driving by her home. Plaintiff expressed concerns for her safety. Plaintiff was so disturbed by all of this, and she continued to ask the Company for help. Despite making these reports, nothing was done.

55. On July 28, 2021, Plaintiff and her supervisor Roberto Pena were attacked by Company's employee, Austin Pappas. Austin Pappas reported directly to Plaintiff. Austin Pappas had had prior issues with both Roberto Pena and Plaintiff for correcting him on safety violations. On this day the two had been rounding on the worksite. Plaintiff noticed that Austin Pappas was not wearing any Personal Protective Equipment (PPE). After receiving a verbal reminder from Plaintiff, Austin Pappas attacked and aggressively challenged Plaintiff for requesting that he provide her with work documentation, which was a routine request. In an attempt to deescalate Austin Pappas irate and erratic behavior, Roberto Pena and Plaintiff left the worksite. Plaintiff filed a complaint regarding this incident with both Holly True and Justin Rich.

56. On July 30, 2021, Iris Pace informed Plaintiff that she was being suspended until further notice and demanded that she exit the premises immediately. When asked why she was being suspended, Iris Pace informed Plaintiff that she was being suspended for being in a sexual relationship with her boss, Roberto Pena. Plaintiff immediately restated her position as a married and professional woman who was not currently or previously in a romantic relationship with Roberto Pena. Iris Pace said that the Company would contact Plaintiff. However, Iris Pace failed to provide Plaintiff with any documentation or paperwork related to her suspension.

57. On August 26, 2021, Iris Pace, Jennifer Fay, and Renee Reibe, met with Plaintiff to review all of the complaints that she had asserted with the Company. Unfortunately, the leadership team used this time to again interrogate Plaintiff about her alleged romantic relationship with Roberto Pena. They showed Plaintiff an old picture of her and Roberto attending the same event years prior. When they finally inquired about the Austin Pappas' attack on both Plaintiff and Roberto Pena, Plaintiff told them that she feared for her life. She went on to inform them that she did not have any weapons in her car. The only thing she had was her phone and her car. She felt defenseless and scared because she knew she was not strong enough to fight Austin Pappas. In response, they informed her that Austin Pappas had made a written request for her credentials, and he had attested to his aggressive behavior.

58. On September 24, 2021, Plaintiff was fired by the Company's President Matthew Prine. Prior to this interaction, Plaintiff had never spoken or met Matthew Prine. Plaintiff's supervisor Roberto Pena, nor his supervisor Holly True were present. During the termination conversation, Matthew Prine referenced and recited the terms of an

"Agreement" from the Company to Plaintiff. Matthew Prine informed Plaintiff that she had thirty days to sign the Agreement. Further, that whether she signed the Agreement or not the Agreement was going to be executed. When asked why she was being terminated, Matthew Prine stated that she was not a "good fit" and that the "guys thought she was too aggressive." Plaintiff then inquired about the sexual misconduct investigation and its outcome. Matthew Prine stated that she should review the Agreement for this information. Contrary to Matthew Prine's statement, the Agreement had no mention of a sexual misconduct investigation.

59. Soon thereafter, Plaintiff learned that her supervisor, Roberto Pena had been terminated and offered a severance package by the Company.

60. Plaintiff never received a formal termination letter from the Company.

61. The Company provided a shifting pretextual explanation for its termination of Plaintiff in its EEOC rebuttal.

## VI.     Claim I

### Race & Sex Based Discrimination

62. Plaintiff incorporates by reference paragraphs 1-61.

63. Defendant violated Plaintiff's civil rights by discriminating against her based on her race and sex in violation of Title VII, Section 1981, and the Indiana law.

## VII.     Claim II

### Retaliatory Termination For Protected Activity

64. Plaintiff incorporates by reference paragraphs 1-62.

65. Defendant retaliated against Plaintiff by terminating her employment for engaging in a protected activity in violation of Title VII, Section 1981, and Indiana law.

## VIII. Relief

WHEREFORE, Plaintiff respectfully requests that the Court grant the following relief:

i. Award Plaintiff back pay and benefits lost;

ii. Award Plaintiff compensatory damages for future pecuniary loss, emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life;

iii. Award Plaintiff liquidated damages;

iv. Award Plaintiff punitive damages.

v. Award Plaintiff costs in this action and reasonable attorney fees;

vi. Grant Plaintiff any other relief, which is allowable under the circumstances of this case.

## IX. REQUEST FOR JURY TRIAL

66. Plaintiff hereby requests that this cause be tried by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Dated: April 7, 2023

Respectfully Submitted,

_(signature: Thakena Hogue)_

Thakena Hogue, 35543-49
Attorney for Plaintiff

Thakena Hogue, 35543-49
The Magi Group, LLC.
9165 Otis Avenue, Suite 231
Indianapolis, IN 46216
317-436-2828
thakena@lawmede8.com